UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STAR INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>    v.<br><br>EUN GYEONG YEON, *et al.*,<br><br>    Defendants. | Case No. C23-89RSL<br><br>ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT |

This matter comes before the Court on defendants' "Motion for Summary Judgment" (Dkt. # 17) and plaintiff's "Motion for Summary Judgment" (Dkt. # 18). Having reviewed the submissions of the parties and the remainder of the record, the Court finds as follows:

**I.   Background**

    **A. Underlying Lawsuit**

On June 7, 2019, defendants in this action – Eun Gyeong Yeon and Hyo Gi Yeon[1] – filed a lawsuit in Washington state court (the "Underlying Lawsuit"). *See* Dkt. # 1-1. The Underlying Lawsuit alleges that in July 2018 – while on vacation in the Seattle metropolitan area – defendants' mother, Sarah Ha, purchased two used tires from Budget Truck for her Kia Sorrento. *Id.* at 3-4.[2] Budget Truck installed these tires on the rear axle of the Kia. *Id.* at 4. At

---

[1] Defendants brought the June 2019 lawsuit in state court and defend the instant lawsuit both individually and on behalf of their mother, Sarah Ha's, estate.

[2] The original lawsuit named "Budget Auto Wrecking, Inc." as a defendant. *See* Dkt. # 1-1. Budget Auto was dismissed from the lawsuit without prejudice and plaintiffs in the underlying lawsuit

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT - 1

least one of these tires (the "subject tire") was allegedly manufactured in 1999, making it almost 19 years old at the time of sale. *Id.* at 3. The Underlying Complaint alleges that Ms. Ha received no warning regarding the age of the tire and accompanying risk of failure. *Id.* at 4.[3]

On August 2, 2018, Ms. Ha and her son, Hyo Gi Yeon, were driving through Gallatin County, Montana, en route from Seattle to Kansas, when "the subject tire suffered a sudden catastrophic failure, causing the Kia to leave the road and rollover, ejecting Ms. Ha from the Kia." *Id.* at 4. Both driver and passenger suffered severe injuries from the accident – Ms. Ha eventually died from her accident-related injuries. *Id.* at 4-5.

In the Underlying Lawsuit, the Yeons asserted claims against Budget Truck for negligence arising from: (a) their sale of the subject tire; (b) their installation of the subject tire on the Kia; and (c) their failure to warn regarding the age of the subject tire. Dkt. # 1-1 at 6-7.

## B. Insurance Coverage

Budget Truck has an insurance policy with plaintiff in the instant case, Star Insurance Company, which provides coverage for the Underlying Lawsuit. Dkt. # 19-3. In the relevant policy, the schedule of coverages is provided as follows:

> **ITEM TWO**
>
> **Schedule Of Coverages and Covered Autos**
> This policy provides only those coverages where a charge and limit, if applicable, are shown in the columns below. Each of the "auto"-related coverages will apply only to those "autos" shown as covered "autos."
> **"Autos" are shown as covered "autos" for the applicable coverages by the entry of one or more of the symbols from Section I – Covered Autos Coverages of the Auto Dealers Coverage Form next to the name of the "auto"-related coverage.**

---

filed amended complaints naming Budget Truck Wrecking, Inc., J&J West Brothers, LLC, James West, and Jason West as defendants. *See* Dkt. # 1-1; Dkt. # 1-2; Dkt. # 1-3; Dkt. # 1 at 2.

[3] While not a party to the instant lawsuit, the Underlying Complaint also alleges that Ms. Ha took the Kia to a Pep Boys in Federal Way, Washington, where Pep Boys aligned the tires and changed the oil on the Kia. Dkt. # 1 at 4. The Underlying Lawsuit raises negligence claims against Pep Boys on the basis that it failed to give Ms. Ha any warning about the age of the tire or risk of failure. *Id.*

ORDER ON CROSS-MOTIONS FOR SUMMARY
JUDGMENT - 2

| Coverages | Covered Autos | Limit |
|---|---|---|
| Covered Autos Liability | 21 | $1,000,000 Each Accident |
| General Liability Bodily Injury And Property Damage Liability | | $1,000,000 Each Accident |
| Damage To Premises Rented To You | | $1,000,000 Any One Premises |
| Personal And Advertising Injury Liability | | $1,000,000 Any One Person Or Organization |
| | | $3,000,000 General Liability Aggregate |
| | | $3,000,000 Products And Work You Performed Aggregate |

Dkt. # 1-4 at 34. In Section I – Covered Autos Coverages, the policy explains the "covered auto designation symbols" as follows:

> **A. Description Of Covered Auto Designation Symbols**
> Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to coverage on the Declarations designate the only "autos" that are covered "autos".
>
> | Symbol | Description Of Covered Auto Designation Symbols |
> |---|---|
> | 21 | Any "Auto" |

*Id.* at 63. The liability coverage of Section I – Covered Auto Coverages is described in the policy as follows:

> **D. Covered Autos Liability Coverage**
>   **1. Coverage**
>
> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos."

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT - 3

. . .

*Id.* at 64. Coverage under "Section D. Covered Autos Liability Coverage" in the Policy is subject to the following condition:

> **5. Limit Of Insurance — Covered Autos Liability**
> For "accidents" resulting from the ownership, maintenance or use of covered "autos", the following applies:
>
> Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined resulting from any one "accident" involving a covered "auto" is the Limit of Insurance for Covered "Autos" Liability Coverage shown in the Declarations.
>
> Damages and "covered pollution cost or expense" payable under the Limit of Insurance for Covered "Autos" Liability Coverage are not payable under any applicable Limits of Insurance under Section II — General Liability Coverages or Section III — Acts, Errors Or Omissions Liability Coverage.
>
> All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".
>
> No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Auto Medical Payments Coverage endorsement, Uninsured Motorists Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.
> …

*Id.* at 68. Section II – General Liability Coverages of the Policy provides in relevant part as follows:

> **SECTION II – GENERAL LIABILITY COVERAGES**
> **A. Bodily Injury And Property Damage Liability**
> **1. Coverage**
> **a.** We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies caused by an "accident", and resulting from your "auto dealer operations" other than the ownership, maintenance or use of "autos".

ORDER ON CROSS-MOTIONS FOR SUMMARY
JUDGMENT - 4

> We have the right and duty to defend any "insured" against a "suit" asking for these damages. However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. But:
>
> **(1)** The amount we will pay for damages is limited as described in Paragraph **F.** Limits Of Insurance — General Liability Coverages; and
>
> **(2)** Our duty to defend or settle ends when the applicable limit of insurance has been exhausted by payment of judgments or settlements under Paragraph **A.** Bodily Injury And Property Damage Liability or **B.** Personal And Advertising Injury Liability or medical expenses under Paragraph **C.** Locations And Operations Medical Payments.
>
> No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.
> …

*Id.* at 73. Coverage under Section II – General Liability in the Policy is subject to the following condition:

> **F. Limits Of Insurance — General Liability Coverages**
> **1.** Regardless of the number of "insureds", claims made or "suits" brought or persons or organizations making claims or bringing "suits", the:
> **a.** General Liability Aggregate Limit shown in the Declarations is the most we will pay for the sum of all: **(1)** Damages under Paragraph **A.** Bodily Injury And Property Damage Liability, except damages because of "bodily injury" and "property damage" that are both:
> **(a)** Sustained away from locations owned, maintained or used for your "auto dealer operations"; and
> **(b)** Arising out of your "products" or "work you performed";
> . . .
> **b.** The Products And Work You Performed Aggregate Liability Limit is the most we will pay under Paragraph **A.** Bodily Injury And Property Damage Liability for "bodily injury" and "property damage" that are both:
> **(1)** Sustained away from locations owned, maintained or used for your "auto dealer operations"; and
> **(2)** Arising out of your "products" or "work you performed".
> . . .
> **4.** Subject to Paragraph **1.a.** or **1.b.** above, whichever applies, the General Liability Bodily Injury And Property Damage Liability Each "Accident" Limit shown in the Declarations is the most we will pay for the sum of all

ORDER ON CROSS-MOTIONS FOR SUMMARY
JUDGMENT - 5

> damages under Paragraph **A.** Bodily Injury And Property Damage Liability resulting from any one "accident".
>
> Damages payable under any applicable Limits of Insurance for General Liability Coverages are not payable under Section I — Covered Autos Coverages or Section III — Acts, Errors Or Omissions Liability Coverage.
>
> . . .

*Id.* at 81. The Policy also contains the following definitions, which apply to the Covered Auto Coverages and General Liability Coverages:

> **SECTION V – DEFINITIONS**
> **A.** "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage."
> . . .
> **D.** "Auto" means a land motor vehicle, "trailer" or semitrailer.
> . . .
> **E.** "Auto dealer operations" means the ownership, maintenance or use of locations for an "auto" dealership and that portion of the roads or other accesses that adjoin these locations. "Auto dealer operations" also include all operations necessary or incidental to an "auto" dealership.
> **F.** "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.
> . . .
> **T.** "Products" includes:
> **1.** The goods or products made or sold in an "auto" dealership by:
> **a.** You; or
> **b.** An "auto" dealership you have acquired; and
> **2.** The providing of or failure to provide warnings or instructions.
> …

*Id.* at 87-89.

### C. Settlement Agreement

On November 23, 2020, counsel for Star Insurance wrote to counsel for the plaintiffs in the Underlying Lawsuit (defendants in the instant suit), indicating that Star Insurance would agree to pay $1,000,000 under the Budget Truck Policy to settle all claims against Budget Truck Wrecking, Inc.; Budget Auto Wrecking Inc.; J&J West Brothers, LLC; James West; and Jason West (collectively, the "Released Parties"). *Id.* at 9.

On December 21, 2022, the plaintiffs in the Underlying Lawsuit, Star Insurance, and the Released Parties executed a Settlement Agreement and Release of All Claims ("Agreement").

ORDER ON CROSS-MOTIONS FOR SUMMARY
JUDGMENT - 6

*Id.* at 9. In the Agreement, the Parties agree, *inter alia*, that: (1) the minimum amount of liability coverage under the Policies with regard to the Underlying Lawsuit is $1,000,000; (2) the plaintiffs in the Underlying Lawsuit contend that the maximum amount of coverage with regard to the Underlying Lawsuit available under the Policies is $3,000,000, which the Released Parties disagree with; and (3) a genuine and good faith dispute exists regarding the applicable limits of coverage available towards settlement of the Underlying Lawsuit. *Id.*

In the Agreement, the parties further agreed that Star Insurance would submit the coverage dispute to this Court to solely address the issue of the applicable limits of coverage available under the Budget Truck Policy towards settlement of the Underlying Lawsuit. Dkt. # 1 at 9.

### D. Instant Lawsuit

Pursuant to the parties' Settlement Agreement, Star Insurance filed the instant lawsuit in this Court. *See generally* Dkt. # 1. Star Insurance asks this Court to enter declaratory judgment finding (1) that the most that Star Insurance would be obligated to pay towards settlement of the Underlying Lawsuit is the $1,000,000 "per accident" liability limits in Section I – Covered Autos Coverages of the Budget Truck Policy; (2) that in the event Section II were to apply to the claims arising out of the Accident, the most that Star Insurance will pay towards settlement of the Underlying Lawsuit is the $1,000,000 "per accident" liability limits in Section II – General Liability Coverages of the Budget Truck Policy; and (3) that to the extent that any payment is made under one liability section towards settlement of the Underlying Lawsuit, additional indemnity payments shall not be made under other sections of the Budget Truck Policy towards settlement of the Underlying Lawsuit. *Id.* at 10-11.

On April 28, 2023, defendants in the instant lawsuit filed a motion for summary judgment, asking this Court to "issue a judgment declaring the applicable policy limit of the subject insurance policy for the claims made against Star's insureds in the underlying lawsuit is $3,000,000.00." Dkt. # 17 at 17. Plaintiff Star Insurance filed its own motion for summary judgment on the same day. Dkt. # 18.

### II. Discussion

ORDER ON CROSS-MOTIONS FOR SUMMARY
JUDGMENT - 7

**A. Legal Standard**

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Here, the parties do not dispute the underlying facts and simply ask the Court to interpret the relevant insurance policy. Because the interpretation of an insurance policy is an issue of law, *Transcon. Ins. Co. v. Wash. Pub. Utils. Dists.' Util. Sys.*, 111 Wn. 2d 452, 456 (1988) (citation omitted), this case may be resolved pursuant to the parties' summary judgment motions. When simultaneous cross-motions for summary judgment on the same claim are before the Court, the Court "rule[s] on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." *Tulalip Tribes of Wash. v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015).

A Court interpreting an insurance policy under Washington law must give it a "practical and reasonable interpretation rather than a strained or forced construction that leads to an absurd conclusion, or that renders the policy nonsensical or ineffective." *Id.* at 457 (citations omitted). Courts must "interpret insurance contracts as the average insurance purchaser would understand them," giving undefined terms their "plain, ordinary and popular meaning." *Allstate Insurance Company v. Raynor*, 143 Wn. 2d 469, 476 (2001) (citations and quotation marks omitted).

"'[I]f the policy language is clear and unambiguous, we must enforce it as written; we may not modify it or create ambiguity where none exists.'" *Kut Suen Lui v. Essex Ins. Co.*, 185 Wn. 2d 703, 712 (2016) (quoting *Quadrant Corp. v. Am. States Ins. Co.*, 154 Wn.2d 165, 171 (2005)). Language in an insurance contract is ambiguous if, on its face, it is fairly susceptible to two different but reasonable interpretations. *Id.* at 712. If a clause is ambiguous, the Court may rely on extrinsic evidence of the intent of the parties to resolve the ambiguity. *Quadrant Corp.*, 154 Wn. 2d at 171-72. Any ambiguity remaining after examination of the applicable extrinsic evidence is resolved against the insurer and in favor of the insured. *Id.* at 172.

Here, the relevant issue in both parties' summary judgment motions is which policy limit governs the potential recovery in the Underlying Lawsuit. Star Insurance argues that a $1,000,000 limit governs because Section I of the insurance policy, "Covered Auto Coverages,"

ORDER ON CROSS-MOTIONS FOR SUMMARY
JUDGMENT - 8

applies to the accident. Dkt. # 18 at 2. Defendants argue that a $3,000,000 limit governs because Section II of the insurance policy, "General Liability Coverages," applies to the accident, and the applicable policy limit is the $3,000,000.00 "products and work you performed aggregate" limit. Dkt. # 17 at 9.

### B. Section I – Covered Auto Liability Limits

The parties first dispute whether the Underlying Lawsuit falls under Section I of the insurance policy, which provides coverage for "Covered Autos." While the parties disagree on the ultimate conclusion, they agree on the relevant analysis. Specifically, in order for the Underlying Lawsuit to fall within the ambit of Section I, first, Ms. Ha's Kia would need to qualify as a "covered auto"[4] under the policy, and second, the accident must result from the "ownership, maintenance or use" of the Kia.

#### i. "Covered Auto"

The first question is whether Ms. Ha's Kia is a "covered auto" under the policy. The policy uses numerical symbols to describe the "autos" that may be covered "autos." *See* Dkt. # 1-4 at 34. In Budget Truck's policy, the "autos" covered by "covered autos liability" are described by symbol 21. *Id.* Symbol 21 is defined as "any auto." *Id.* at 63. "Auto" is defined in the policy as "a land motor vehicle, trailer or semitrailer." *Id.* at 87.

Plaintiff argues that under the plain language of the policy, Budget Truck's covered autos liability "broadly applies to any vehicle," including Ms. Ha's Kia. Dkt. # 18 at 12.

Defendants argue that "any auto" means "any vehicle fitting any description in the" table of descriptions of covered auto designation symbols. Dkt. # 22 at 3. Thus, defendants argue, "the Kia must fit one of the descriptions [in the table] for covered auto coverage to apply." *Id.*

---

[4] In the insurance policy, certain words and phrases – such as "auto" – appear in quotation marks to denote their special meaning within the context of the policy. *See* Dkt. # 1-4 at 63. As these "special meanings" are not at issue in this Order, the Court has omitted these internal quotation marks for the ease of the reader and uses quotation marks simply to indicate language taken verbatim from the insurance policy.

ORDER ON CROSS-MOTIONS FOR SUMMARY
JUDGMENT - 9

Defendants argue that this interpretation is supported by the fact that "the subject policy actually has a separate, specific definition for a customer's auto." *Id.* at 4.

Defendants cite to no language in the policy, nor any legal doctrine, that supports interpreting "any auto" to mean only "autos" that fall under one of the descriptions in the table of covered auto designation symbols. Indeed, courts routinely interpret "any auto" insurance provisions broadly, relying on the plain language of the policy. *See Pac. Emp. Ins. Co. v. Domino's Pizza, Inc.*, 144 F.3d 1270 (9th Cir. 1998) (explaining that "because the 'any auto' option chosen by [insured] does not contain any limit on the 'use' of the autos, any use of 'any auto,' which results in an accident and resulting liability on the part of [insured], is covered."); *Navigators Specialty Ins. Co. v. Nationwide Mut. Ins. Co.*, 50 F. Supp. 3d 1186 (D. Ariz. 2014), *aff'd*, 670 F. App'x 957 (9th Cir. 2016) (finding that where insured chose the "any auto" definition for "covered autos," coverage was available for employee's car and noting that if insurer "wanted to limit coverage to only uses of autos that [it] anticipated or approved of, it could have done so. It did not."); *Travelers Indem. Co. v. Swearinger*, 169 Cal. App. 3d 779 (1985) (holding that a vehicle owned by a host family for a school overnight event fell under the "any auto" designation in the school district's auto policy).

To the extent defendants rely on policy's definition of "customer's auto" to conclude that the Kia is not "any auto" under the policy, their argument is unavailing. The insurance policy provides coverage for a "customer's auto" under the Garagekeepers Coverage section of the Covered Auto coverages. Dkt. # 1-4 at 68. The Garagekeepers Coverage provides coverage for "loss" to a "customer's auto" left in the insured's care while the insured is attending, servicing, repairing, parking or storing the auto in the context of the insured's "auto dealer operations." *Id.* Under the policy, "[c]ustomer's auto means a land motor vehicle, trailer or semitrailer lawfully within your possession for service, repair, storage or safekeeping, with or without the vehicle owner's knowledge or consent. A customer's auto also includes any such vehicle left in your care by your employees and members of their households who pay for services performed." *Id.* at 88.

As an initial matter, defendants fail to articulate why the inclusion of the "customer's auto" definition would remove the Kia from the "any auto" definition. From the plain language of the policy, it appears that the "Garagekeepers Coverage" simply provides Budget Truck with another line of auto-related liability coverage. The Covered Autos Liability section of the policy provides coverage for losses resulting from the "ownership, maintenance or use" of "any auto." *Id.* at 64. The Garagekeepers Coverage provides coverage for losses to a "customer's auto" that occur while the insured is conducting activities that may not fall under "ownership, maintenance or use," including "parking or storing" the customer's "auto." *Id.* at 68. The Garagekeepers Coverage is also distinct insofar as it only provides damages for "loss to a customer's auto" or related equipment whereas the Covered Autos Liability section provides coverage more broadly for "damages because of bodily injury or property damage." *Id.* at 64, 68. Moreover, defendants make no argument that the Kia falls under the definition of "customer's auto." Indeed, defendants specifically argue that the Kia does not fall under the definition of "Autos Left With You For Service, Repair, Storage Or Safekeeping," *see* Dkt. # 22 at 4, which is *identical* to the policy's definition of "customer's auto," *see* Dkt. # 1-4 at 64.

Given that the policy language clearly and unambiguously states that "any auto" is a covered auto, the Court declines to impose an arbitrarily restrictive definition on the term. As defendants have provided no clear basis for limiting the broad definition provided by the policy, the Court concludes that Ms. Ha's Kia is "any auto" under the terms of the policy.

### ii. Accident Resulting from Ownership, Maintenance or Use

Having determined that Ms. Ha's Kia qualifies as a "covered auto" under the policy, the Court must next determine whether the damages claimed in the Underlying Lawsuit were "caused by an accident and resulting from the ownership, maintenance or use of covered autos." Dkt. # 1-4 at 64. Star Insurance contends that the underlying accident resulted from Budget Truck's "maintenance" of the Kia. Dkt. # 21 at 11-12. Defendants contend that "[t]he case and claims had nothing to do with maintenance of the Kia." Dkt. # 22 at 6. Significantly, whether the act of selling and installing the used tires to Ms. Ha constitutes "maintenance" is also dispositive of defendants' argument that coverage for the accident should fall under Section II of the policy,

ORDER ON CROSS-MOTIONS FOR SUMMARY
JUDGMENT - 11

which provides liability coverage for damages "caused by an accident, and resulting from your auto dealer operations *other than* the ownership, maintenance or use of autos." Dkt. # 1-4 at 73 (emphasis added).

As "maintenance" is not defined by the policy, it is given its plain and ordinary meaning. *Raynor*, 143 Wn. 2d at 476. The Washington Court of Appeals has defined maintenance as the labor of keeping something in a state of repair or efficiency. *Truck Ins. Exch. v. Aetna Cas. & Sur. Co.*, 13 Wn. App. 775, 778 (1975) (citations omitted). Pursuant to this definition, Washington courts have concluded that performing a "tune up" on a vehicle qualifies as maintenance, *id.*, "installing a fuel tank in an automobile so that it may run is maintenance," *Krempl v. Unigard Sec. Ins. Co.*, 69 Wn. App. 703, 708 (1993), and replacing an ABS sensor and checking a fuel system is maintenance, *Grange Ins. Ass'n v. Hegyes*, 138 Wn. App. 1005 (2007).

Courts in other jurisdictions have similarly concluded that "maintenance" in this context means "periodic checks and repairs performed in order to keep the vehicle in proper condition and good working order." *Gering v. Merchants Mut. Ins. Co.*, 429 N.Y.S.2d 252, 254 (1980); *see also Morris v. Am. Liab. & Sur. Co.*, 322 Pa. 91, 94-95 (1936). Significantly, other courts to consider the issue have also "recognized that the plain meaning of 'arising out of maintenance' is that liability will accrue where faulty or negligent maintenance of a vehicle results in an incident causing damages to another." *Ply v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania*, 81 P.3d 643, 650 (Okla. 2003) (citing *Bituminous Casualty Corp. v. North River Ins. Co.*, 46 Ill. App. 3d 654, 658 (1977)).

Star Insurance argues that here, the Underlying Lawsuit "involved a single vehicle in a single-vehicle accident that was allegedly caused by a malfunctioning tire installed on the subject auto by Budget Truck's maintenance of any auto." Dkt. # 21 at 11-12. Relying on the dictionary definition of "to maintain," meaning "to keep in an existing state (as of repair, efficiency, or validity) preserve from failure or decline," plaintiff argues that "replacing a vehicle's tires is a regular maintenance task that every vehicle owner should do in order to preserve the vehicle from failure or decline." Dkt. # 23 at 4.

ORDER ON CROSS-MOTIONS FOR SUMMARY
JUDGMENT - 12

Defendants argue against this conclusion, contending that "[s]elling a 19-year-old tire is not 'maintenance' under any reasonable definition of the term. Neither is failing to warn the buyer that a tire is 19 years old and comes with high risk of catastrophic failure." Dkt. # 24 at 3. However, defendants fail to meaningfully engage with the plain and ordinary meaning of "maintenance," or cite to any relevant case law or authority, simply concluding that "[t]he case and claims had nothing to do with maintenance of the Kia." Dkt. # 22 at 6.

The Court disagrees. While defendants focus on their failure to warn claims and the sale of the tires, the complaint in the Underlying Lawsuit makes several claims against Budget Truck based on the sale *and installation* of the subject tires. Dkt. # 1-1 at 6-7. Replacing a car's tires qualifies as the labor of keeping something in a state of repair or efficiency. *Truck Ins. Exch.*, 13 Wn. App. at 778. That this maintenance was allegedly conducted negligently does not negate the categorization of the action as "maintenance." Accordingly, because the accident resulted from "maintenance" to a "covered auto," the Court concludes that Section I – Covered Auto Coverages applies in this case.

### C. Coverage Limit

Because the Court concludes that coverage Section I – Covered Auto Coverages applies here, the policy limit governing the potential recovery in the Underlying Lawsuit is $1,000,000. Under the policy, Section I – Covered Auto Coverages contains an express limit:

> For "accidents" resulting from the ownership, maintenance or use of covered "autos", the following applies: Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined resulting from any one "accident" involving a covered "auto" is the Limit of Insurance for Covered "Autos" Liability Coverage shown in the Declarations.
>
> Damages and "covered pollution cost or expense" payable under the Limit of Insurance for Covered "Autos" Liability Coverage are not payable under any applicable Limits of Insurance under Section II — General Liability Coverages or Section III — Acts, Errors Or Omissions Liability Coverage.

ORDER ON CROSS-MOTIONS FOR SUMMARY
JUDGMENT - 13

> . . .
>
> No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Auto Medical Payments Coverage endorsement, Uninsured Motorists Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.

Dkt. # 1-4 at 68. In the Budget Truck policy's Declarations, the "Limit of Insurance for Covered Autos Liability Coverage" is $1,000,000 per accident. Dkt. # 1-4 at 34.

Here, the Underlying Lawsuit involved a single-vehicle accident. Thus, coverage under this section is limited to the $1,000,000 "per accident" limit as shown in the Policy Declarations. Defendants do not contest plaintiff's conclusion that the language of the policy stating that damages recovered under the "Covered Autos Liability Coverage are not payable under any applicable Limits of Insurance under Section II . . . or Section III . . ." restricts coverage to the limits of *either* Section I or Section II and does not allow recovery under both for the same accident. *See* Dkt. # 18 at 15. The Court agrees that the "anti-stacking" language in the policy prevents defendants from recovering under two different Sections of the policy. *See Certain Underwriters at Lloyd's London v. Valiant Ins. Co.*, 155 Wn. App. 469 (2010) (upholding an anti-stacking provision that limited recovery to one policy limit per "occurrence" when the insured held two or more policies with the insurer).

### III.  Conclusion

For all the foregoing reasons, plaintiff's motion for summary judgment (Dkt. # 18) is GRANTED and defendants' motion for summary judgment (Dkt. # 17) is DENIED. The Court will enter judgment declaring that the most Star Insurance Co. is obligated to pay towards settlement of the Underlying Lawsuit is the $1,000,000 "per accident" liability limit in Section I – Covered Autos Coverages of the Policy.

IT IS SO ORDERED.

ORDER ON CROSS-MOTIONS FOR SUMMARY
JUDGMENT - 14

DATED this 20th day of June, 2023.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER ON CROSS-MOTIONS FOR SUMMARY
JUDGMENT - 15